## Pendergrass v. Butcher, et al.

(Decided March 27, 1914.)

### Appeal from Lee Circuit Court.

Land—Action for Trespass—Boundary—Description.— In an action to restrain the cutting of timber and for trespass upon land, evidence examined and held that the court erroneously adjudged the land to plaintiff. While plaintiff holds under an older deed, yet her deed does not include the land in controversy and as she must be confined to the description named in the deed, her claim must fail.

S. P. STAMPER for appellant.

J. K. ROBERTS and HAZELRIGG & HAZELRIGG for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Pendergrass sued Renia Butcher, together with her husband, and son, to restrain them from cutting timber, and trespassing upon a boundary of land set up in the petition. Renia Butcher answered, claiming that the land described in the petition belonged to her, and was included within a boundary which had been conveyed to her by James Spicer. It seems that one John S. Robinson, who, by the way, was the grandfather of the appellant, Pendergrass, owned a large body of land containing more than 2,000 acres. On December 8, 1910, Robinson conveyed part of this land to the appellant, Pendergrass, but, in the deed, set up a boundary enclosing all of it. However, he specially excepted from the conveyance fourteen tracts which he had theretofore conveyed to others. These excepted lands were not minutely described. One of these exceptions was "100 acres, more or less, to James Spicer." It will thus be observed that the title to both parties hereto comes from

the same source, that is, from John S. Robinson. Robinson conveyed to Spicer in 1908, and Spicer to Butcher in 1909. Robinson conveyed the residue, excepting the fourteen tracts, to Pendergrass, the appellant, in 1910.

While the appellee is holding under an older deed, yet she is none the less bound by the description in it when in a controversy with Pendergrass, the subsequent purchaser, as to location of the boundary. We quote the boundary conveyed by Spicer to Butcher, and which is also the identical description given in the deed from Robinson to Spicer:

"A tract or parcel of land lying and being in Lee County, Kentucky, on the waters of Spring Hollow and bounded as follows, to-wit: Beginning at a Beech tree on the bank of the creek about forty yards above the mouth of Spring Hollow on Bald Rock Fork Creek, said beech being marked with three hacks; thence running an East course a straight line to the point of *the cliff; thence with the cliff around to the head of Spring Hollow; thence around the cliff, a South course, to the line of the Simco Land Company;* thence with said company's line, a North course, to Bald Rock Fork Creek; thence with said creek to the place of beginning, containing 100 acres, more or less, *and including all the land that lays within the waters of Spring Hollow.*"

Spring Hollow Creek or branch flows through what is known as spring hollow. It is clear that the term "Spring Hollow" is used indiscriminately, and may designate either the creek or the hollow. This hollow is a deep basin, of triangular shape, enclosed on two sides by a series of sand stone cliffs ranging in height from 30 to 145 feet. The base of the triangle, which is the opening of the hollow, is on Bald Rock Fork, into which Spring Hollow Creek empties. This cliff is only broken in a few places, where feeders of Spring Hollow cut through it in gorge-like fashion. These feeders begin their flow from points near the dividing ridge which encircles the cliff basin, the ridge ranging from 100 to 400 yards back from the cliff, and running all the way around Spring Hollow, in practically a parallel line to the cliff. Except for these gorges, which are from 10 to 100 feet in width, there is no break in the cliff, and it is so high and steep that no fences are needed except in the gorges, and no better land mark could be imagined. From the dividing ridge down to the cliff there is a gradual slope. The ridge is not made of a cliff, **nor**

is there any series of cliffs between the ridge and the cliff above described. The only place where the cliff and the dividing ridge coincide, so far as this boundary is concerned, is the second call in the Butcher deed where the course is East, ''a straight line to the point of the cliff.'' It will be noticed that from this point her call does not follow the ridge, but reads, ''thence with the cliff around to the head of Spring Hollow; thence around with the cliff a South course to the Simco line.'' The controversy here has to do with the location of these calls just referred to. So far as Pendergrass is concerned, the location of the Simco line is immaterial. Appellee, Butcher, insists that the cliff called for in her deed really means the dividing ridge which leads off from the cliff at the second call above named, and runs around the cliff parallel with, and some distance from it. The only justification for this claim is the fact that her boundary, according to the deed, should contain 100 acres, more or less, and the concluding clause in the description which says ''all the land that lays within the waters of Spring Hollow.'' If that means Spring Hollow creek, or branch, and it was not limited by any other description, she would go to the dividing ridge, of course. If she is confined to the cliff, then she will only get about 75 acres of land, but if she goes to the dividing ridge she will get from 130 to 260 acres, as estimated by the several surveyors. As we view it, the cliff call is too plain, and specific for misunderstanding. It is a natural object of too much prominence, and an outline too well defined to ignore it, particularly when it is specially called for, and when the calls and outlines insisted upon, in lieu of it, in no way resemble it. While Pendergrass is a subsequent purchaser, he is, so far as this proof shows, an innocent one for value. He had a right to rely upon the description in the Butcher deed, as he viewed it of record, when he purchased, and those holding under the Butcher deed should be confined to the description named in it. It is true that the concluding sentence in the Butcher description called for all the land that lays within the waters of Spring Hollow. If this general description, in fact, conflicts with the specific description, set forth in the deed just above it, wherein it is shown that the land conveyed is enclosed within the cliff, then the general must yield to the specific description.

The lower court sustained appellee's claim to all the land between the cliff and the dividing ridge, and this court would like to take the same view of it. Appellee is an inexperienced negro woman, and we are convinced that her vendor, Spicer, when negotiating the sale, took her to the top of the dividing ridge, and explained to her that the ridge was his boundary, and that he would convey to her all the land enclosed within it. Spicer, whose deposition was taken, does not deny this, neither does he deny that he went with this woman, and with a pocket knife marked a number of trees along the dividing ridge. The proof, however, does not show that appellant, Pendergrass, was a party to this, or knew anything of it, nor is there anything in the record to bring home to him any notice that appellee Butcher claimed beyond the cliff which her deed called for.

The lower court did not render a written opinion, and we are left to surmise as to his reasons for finding against appellant. We take it that his judgment was based upon the failure of Spicer to deny the fraud which he practiced. If we are correct in this, we commend the trial court in a desire to protect the weak, but we are compelled to reverse the judgment, and it is so ordered.

The lower court will enter a judgment awarding to appellant the land in controversy, making the cliff the line between the parties.